### *RICHARD H. UMBENHAUER v. STATE OF OHIO.

**1. VALUE OF A NOTE NEED NOT BE ALLEGED IN INDICTMENT.**

In an indictment for unlawfully offering to sell promissory notes, the signature to which had been procured by false pretenses, it is not necessary to allege that the notes are of any value where a copy thereof is set forth in the indictment.

**2. AVERMENT OF SCIENTER OF FALSE REPRESENTATIONS.**

An indictment which charges procuring a signature to a note by false pretenses, and attempting to sell the note knowing it was thus obtained, sufficiently avers knowledge of the falsity of the representations.

**3. INSTRUCTIONS TO JURY NEED NOT BE BEFORE ARGUMENTS.**

Upon the trial of a criminal case it is not error for the court to refuse to instruct the jury, at the request of the defendant, upon matters of law before the argument begins.

**4. PART OF THE PROOF OF CONSPIRACY NOT GIVEN UNTIL AFTER EVIDENCE OF CO-CONSPIRATORS.**

Declarations of co-conspirators are always competent evidence against any one of them when made in furtherance of the common scheme or design, whether they are jointly indicted or not. While it is the general rule that such evidence should not be admitted until after the state establishes the conspiracy *prima facie*, yet, if the record shows that such evidence was offered before proof of conspiracy, it is not error to the prejudice of the accused if, after the admission of such declarations, there is sufficient evidence to establish the conspiracy.

ERROR to the Court of Common Pleas of Stark county.

ALBAUGH, J.

The plaintiff in error, Richard H. Umbenhauer, was indicted at the May term of the court of common pleas, 1889, for unlawfully offering to sell to the Savings Deposit Bank of this city, six promissory notes, each calling for the sum of five hundred dollars, with intent to cheat and defraud one David Conrad.

The indictment sets forth, in substance, that the accused by certain false pretenses procured David Conrad to sign these promissory notes, and after they were so signed and delivered to him, he, with George W. Cliffe, knowing that the signatures to the notes had been thus obtained, offered and proposed to sell the same to the Savings Deposit Bank. The representations and false pretenses alleged to have been made by said Umbenhauer to David Conrad, and by which it is alleged he procured his signature to said promissory notes, among other

---

* This decision was affirmed by the supreme court, without report, March 4, 1890. It denies McGuire v. State, *ante* 318.

things were that he was the agent and attorney of one W. L. Coats, of 98 Clark street, Chicago, Illinois; that Coats was a man of large means worth over two hundred thousand dollars, and that he was the owner of and had the right to sell a certain formula for the manufacture of an improved compound to extinguish fires, and that he was the owner and had the right and authority to sell a certain fire extinguisher, known as The Edison Electric Fire Extinguisher, in certain counties in this state; and he further represented that he was the authorized agent of the said Coats, and as such was duly authorized to sell the right to said device and compound in the state of Ohio and the territory covered by said patent, and to make deeds of conveyance for the same to purchasers, and that the same was a valuable invention, and that by means of such representation he sold to said David Conrad, sixteen counties in the state of Ohio, and falsely and fraudulently did sign and pretend to sign deeds for such territory as the agent and attorney of said Coats, and pretended to convey to him such territory, and by reason of such fraudulent conveyance and false pretenses the said Conrad, on the 5th day of March, 1889, executed his six promissory notes, each calling for the sum of five hundred dollars, payable to the said Umbenhauer, setting forth all of said notes by copy, one of which is as follows:

"$500.00.                                        Canton, Ohio, March 5, 1889.

"On or before one year after date, I promise to pay to R. H. Umbenhauer, or bearer, five hundred dollars negotiable and payable at Savings Deposit Bank, Canton, with interest at the rate of eight per cent. per annum from date, and five per cent. attorney fees, value received.

                                                        "David Conrad."

The indictment further alleges that all of these representations and pretenses made by Umbenhauer for the purpose of procuring the signature of Conrad to said notes, were in fact false, and that the signature of Conrad thereto was procured by means aforesaid and with a full knowledge of that fact. The indictment charges that the said Umbenhauer, with full knowledge of the manner in which said notes were procured, proposed and offered to sell the same to the said Savings Deposit Bank.

The defendant below entered a plea of not guilty to this indictment, and at the October term, 1889, he was tried and convicted, and sentenced to a term in the penitentiary. During the trial a bill of exceptions was taken, setting forth all the proceedings upon the trial, including all of the testimony, and a petition of error is now filed to reverse the judgment of the court of common pleas. Among the many errors assigned are:

First—That the indictment does not charge the defendant with the commission of any crime.

Second—That the court erred upon the trial in permitting certain evidence to be given to the jury on behalf of the state, against the objection of the accused.

Third—That the court erred in refusing to instruct the jury at the conclusion of the testimony, and before the argument, as requested by the accused.

Fourth—That the court erred in refusing to charge the jury as requested, and in the charge as given.

These questions will be disposed of in the order in which the errors are assigned, and I might say that the great number of questions that were raised during the trial, and that appear in the record, will prevent a reference to all of them in detail; but we have examined them all carefully, and will only refer to those which we consider of the greatest importance.

The first question presented and argued with force and ability upon both sides, is as to the sufficiency of the indictment; no objection was taken to the indictment before the accused entered his plea of not guilty, and it is now claimed

that the indictment is defective in this, that it does not set forth facts sufficient to constitute the crime under the statute, and that a verdict of guilty is not supported by sufficient facts therein alleged. The objection that has been most elaborately urged is that the indictment does not aver that the promissory notes procured from Conrad by false pretenses and offered for sale by the accused, were of any value, and it is claimed that the indictment must allege, and that proof must be offered that the notes were of °some value.

There is no direct averment that the notes are of any value, but it is alleged that the accused, with George W. Cliffe, on the 14th of March, 1889, for the purpose and intent to cheat and defraud David Conrad, unlawfully did offer to sell to the Savings Deposit Bank six certain promissory notes of the words and fig-ures following, to-wit, and setting forth all of the notes by copy.

The section of the statute under which the indictment was found provides, that "whoever, by any false pretenses, with intent to defraud, obtains from any person anything of value, or procures the signature of any person as maker, endorser or guarantor thereof, to any bond, bill, receipt, promissory note, or any other evidence of indebtedness, and whoever sells, barters, or offers to sell, barter or dispose of any bond, bill, receipt, promissory note, draft or check, knowing the signature thereto to have been obtained by any false pretense, shall, if the value of the property or instrument so procured, sold or offered to be sold is thirty-five dollars, or more, be imprisoned in the penitentiary not more than three years nor less than one year, or if the value is less than that sum, be fined not more than one hundred dollars nor less than ten dollars, or imprisoned not more than sixty nor less than ten days, or both."

It is conceded by counsel for the state, that where an indictment charges that certain property is obtained from another by means of false pretenses, that it is necessary to allege the value of such property so obtained; but it is contended that this does not apply to promissory notes or other evidences of indebtedness. This statute has undergone various changes since it was first enacted; the original section applied only to obtaining money, goods, etc., with intent to cheat or defraud.

This was amended in 1873, and it was made a penal offense to obtain the signature of any person to bills, bonds, promissory notes, etc., and provided that if the value of the property so obtained, or the amount of the promissory note, etc., shall be equal to or exceed thirty-five dollars, that the penalty be imprisonment in the penitentiary, and if less, by a fine or imprisonment in the county jail. This was amended in 1877, and provided a penalty for any person to sell, or offer for sale, any promissory note * * * the signature to which was procured as maker, endorser, etc., * * * by any false pretense, knowing the same to have been so procured to be made, and that on conviction thereof, if the amount of the promissory note * * * shall be equal to, or exceed, thirty-five dollars, be imprisoned in the penitentiary * * * 74 O. L., 41. Section 7076, Rev. Stat., is, in substance, the same as the statute just referred to, except that it provides that if the value of the property, or instrument so procured is thirty-five dollars, or more, that the punishment shall be imprisonment in the penitentiary.

While the literal construction of this section would seem to require that the indictment should allege in substance the value of the instrument, as well as allege the value of any property thus obtained, we think that it was intended that the grade of punishment should be determined from the amount named in the instrument, rather than from the value thereof. There is such a manifest difference between property, as understood in law, and promissory notes, and other evidences of indebtedness, that the legislature did not intend that it should be necessary to allege in an indictment or to prove upon the trial the value of the promissory notes further than by alleging the amount therein named. The notes having been copied in the indictment in words and figures, it seems to us,

is an allegation, in substance, of the amount of money therein set forth, and a production of these notes upon the trial is sufficient proof to support this averment of the indictment. A promissory note, or other evidence of indebtedness, is a mere promise to pay, a chose in action, and as to whether it has value or not depends entirely upon the responsibility of the maker; if the maker is insolvent the note is of no value no matter what it calls for, and the only way by which the value of such an instrument can be proven would be to prove the financial condition of the maker. This, we think, was not intended. The statute provides that, whoever by false pretense, with intent to defraud, procures the signature of "any person as maker to a promissory note;" the crime, therefore, consists in procuring the signature of a person to a note by false pretense without regard to his financial condition, and afterwards, the selling or offering to sell the same with intent to defraud. There has not been any substantial change in the substance of this statute from the time of the passage of sec. 12, of the act before referred to; and furthermore, sec. 6796 provides, that "when any evidence of debt or written instrument is the subject of a criminal act, the amount of money due thereon or secured thereby, or the value of the property affected thereby, shall be deemed the value therof."

In the case of Adams v. State, 25 O. S., 585, it is said that under the act of February 21, 1875, in a prosecution for such an offense, it is not necessary that the value of the note be found by the verdict of the jury; the amount thereof, and not its value, being the basis upon which the grade of the offense is fixed, and the punishment or conviction is to be determined thereby, and that a general verdict of guilty as the accused stands charged in the indictment covers all the averments constituting the crime charged, the amount of the note, and all other averments in the indictment.

It is further claimed, that it is not alleged that when the accused made the alleged false pretenses, that he knew them to be false, nor that he knew the signature of Conrad had been procured by means of false pretenses. The crime sought to be charged is, that the accused offered to sell certain promissory notes, knowing that the signatures thereto had been obtained by false pretenses. It is not material who procured the signatures to those notes by false pretenses, so that there are proper averments that the accused offered them for sale with the knowledge that they were so procured. It is alleged, however, that the accused was the person who procured the signatures to the notes. If the indictment sufficiently alleges that the signatures were procured under certain false pretenses, which he knew to be false, and afterwards, with knowledge, offered them for sale, it is sufficient; and on examination of this indictment, we think these allegations are substantially made. After setting forth the false pretenses by which the signatures were procured, and allegations that the pretenses were not true, it is averred that the accused had full knowledge that the signature of Conrad was procured and obtained by false pretenses, and with that knowledge that he then offered the same for sale. The facts set forth in the indictment are sufficient, in our judgment, to constitute the crime intended to be charged therein, and that the indictment is sufficient to support a general verdict of guilty.

It is further claimed, that the court erred in admitting certain testimony offered by the state against the objection of the accused. The testimony consists mainly of the declarations of certain parties, some of whom had been engaged with him in and about the sale of this patent, both in Canton and in Cleveland. I will not call attention to the testimony given by each of these parties, but from the examination of the record it appears that all of these persons were acting with him directly or indirectly in the sale of these machines and territory, and we think it is apparent from the record that they all participated more or less in the scheme that was devised by him to induce Conrad to sign these promissory notes. Now, if the record does show that these parties were thus engaged with Umbenhauer for that purpose and in that scheme, they are as

much co-conspirators as if they had been jointly indicted with him, and the declarations of either or any of them, made in furtherance of the scheme, with a view of aiding him to procure the signature of Conrad to these notes, is competent evidence against him. It is not necessary to refer to authorities in support of this proposition. The rule is, however, that before declarations of co-conspirators can be given in evidence upon the trial of any one of them, there must be evidence *prima facie* to show the conspiracy, and to show that the declarations or acts were in furtherance of the common design, and the general rule is that this evidence should be produced before the evidence of the declarations of co-conspirators is given. Now, without saying that there was not sufficient evidence offered that these parties were so engaged with the accused in bringing about a consummation of the scheme to procure the signature of Conrad to these notes before the declarations were given in evidence, yet taking this whole record together, there is ample testimony, whether it was given before or after the declarations were received, to show that these parties were engaged for the very purpose of aiding him in the scheme, and if this proof was made even after the declarations were given in evidence, we can not say that the accused was prejudiced. There was no error in admitting this testimony.

A great many objections and exceptions were made to other testimony offered by the state. We have examined this testimony, and without further reference to it, I will say that we do not think there was any testimony improperly admitted upon the trial.

Passing to the next proposition, the claim is made that the court erred in refusing to instruct the jury at the conclusion of the testimony, and before the argument began, as requested by the defendant. It is claimed that sec. 7300, of the statutes requires the court to instruct the jury upon points of law, when requested by either party, immediately after the evidence is concluded and before the argument begins. This section provides for the order of proceedings upon the trial of a criminal case, and subdivision 5 provides that when the evidence is concluded, either party may request instructions to the jury on points of law, which shall be given or refused by the court, which instructions shall be reduced to writing if either party requires. It is argued that this should be done before the argument begins, and we are cited to a decision by the circuit court of the first circuit in the case of McGuire v. State, 1 Ohio Circ. Dec. 318 (s. c., 3 C. C. R., 551), in support of this claim. In that case it is said that "it is clear, both from the language of the statute and the decision of the supreme court in the case of McHugh v. State, 42 O. S., 154, 162, construing it, that if a charge is asked to be given before the argument, it must be then given either in the form in which it is presented, or in substance; and if refused, that it is error on the part of the court." We regret that we are unable to agree with the construction placed upon this section by the court in that case. We do not think the language of the statute admits of such a construction, neither do we think it was so construed in the case of McHugh v. State, *supra;* it was decided in that case that while the court, when requested to charge under sec. 7300, clause 5, is bound to give or refuse the charge, the court is not required to charge in the language of the counsel, however sound in law or pertinent to the case the proposition may be; but the judge may select his own language, and where the charge is not given substantially, it is to be regarded as refused. The action of the court that was excepted to, and for which error was assigned, was not in refusing to give instructions to the jury before the argument began, but it was in refusing to give them at all. It is said some of the propositions were in form substantially brief arguments in favor of the prisoner, and the court properly refused them for that reason; others to which that objection did not apply were not in terms given or refused, though substantially correct and pertinent to the case. The court say the instructions of law, applicable to the case, must be given when the request is made; to refuse is error. From this it is argued that the

court holds that the instructions must be given at the time the request is made, and before argument. The language used by the court, we think, does not admit of such a construction; we see nothing in this decision that construes that statute to require that the instructions must be given before the argument of the case begins; and in Blackburn v. State, 23 O. S., 146, 165, it is held that under the provisions of the criminal code, which are the same as subdivision 5 of this section, the court is not bound to reduce its instructions to writing, unless requested so to do before the argument of the case, nor to read or deliver the same when so written until after the close of the argument, if any argument is made. This is the more reasonable construction, the design being to give to the court time and opportunity, without unnecessary delay of the trial, to prepare instructions, and is evidently what is intended by the code referred to; it was not intended in providing for the order of trial that the proceedings should be delayed to require the court to examine the number of instructions that might be requested, and, as was requested in this case, so as to have them given before the argument of the case.

It is further alleged that the court erred in refusing to instruct the jury as requested and in the charge as given. We cannot refer to the great number of objections that are made to this charge, nor read the numerous requests that were made by the defendant to charge. The charge is voluminous, and upon a careful reading of it, it seems to us that it was unusually instructive to the jury upon the questions that arose in the case; in fact every conceivable question was fully and carefully covered by the charge, and the rights of the accused as well as those of the state were carefully guarded and protected so that upon the whole we not only say that we are unable to see any error in the charge, but that it contains what we think was the law of the case; and upon examination of the requests, it is found that a number of them were given in substance as requested, and those that were not given were properly refused. There was neither error in the charge as given, nor in the refusal of the requests.

In respect to the claim that the verdict is against the weight of the evidence, we have made an examination of all the evidence in the case, and conclude that there is ample evidence to support the verdict; in fact the reading of this record and of the proof that was offered upon the trial, discloses a scheme of fraud, the extent of which does not very often occur in the history of crimes in this country. Taking the whole of the facts together, from the time the accused landed in this city until the time that those notes were offered for sale, the manner in which they were procured, and the devices that were resorted to, not only by him but by persons whom he had employed to assist him in the perpetration of this crime, develops one of the most dangerous schemes of fraud and false pretense. It is not necessary to further allude to these facts, but is sufficient to say that the verdict is supported by sufficient evidence, and the judgment of the court will be affirmed.

E. B. Finley & C. C. Upham, for plaintiff in error.

John C. Welty, prosecuting attorney, Judge W. R. Day and Henry W. Harter, for defendant in error.